and you might correct me as to how I pronounce this I've pronounced it Gideville Giddeville Giddeville Band versus NGV Gaming and NGV Gaming versus Harrah's thank you I'm understanding that at least as to counsel for the Giddeville Band and Harrah's that you will split the time your honor Fred Petty on behalf of the Giddeville Band it is our intention that I will handle the argument okay mr. Siegel Stanley Siegel is here on behalf of Harrah's if the court has a specific question related to Harrah's then I would ask mr. Siegel to take it thank you very much we'll do it that way we're ready for you sir thank you my name is Steve Kalbacher I'm from Cape Cod Massachusetts and I represent NGV Gaming and this consolidated appeal there are two issues that the briefs have addressed the overriding issue and the only substantive issue in this case pardon me for interrupting but could you help us in connection with questions as to who has settled out and what effect if any that has on our appeals in the main action that was filed first in the district court it just so happens to bear oh six seven the number the higher number in this court it was eight NGV Gaming versus upstream and Harris for torches interference seven or eight months thereafter the tribe filed a declaratory relief and it's entitled Giddeville versus NGV Gaming it bears a lowercase number in this court but with respect to the underlying torches interference action NGV my client the plaintiff in that action has settled all claims against upstream and so the torches interference action that is now before the court is only as against Harris and were the appellant in that case as well as being the appellant in the declaratory judgment action which the okay go ahead the the common substantive issue that's reached in both cases both the underlying torches interference and the later file deck action by the tribe is the scope and application of section 81 of title 25 to contracts in the absence of existing Indian lands that is the primary issue that drives the result in the torches interference action and it's also case dispositive with respect to the tribe's action for declaratory relief the caveat though that we have a threshold question and the tribe's action for declaratory relief with respect to whether or not the lower court had subject matter jurisdiction in the absence of an actual case of controversy and I would like to address that issue first it was clear from the pleadings that we filed initially against Harris and upstream that the my client had absolutely no intention whatsoever of pursuing the tribe for breach of contract what about the indemnification well that's there there is the source of that indemnification is in a contract which has since been terminated recently well that's the other question that was really my threshold question what's the effect of that termination well let me go back if I can to the the status of the agreement between Harris and the tribe as it existed in April 2005 when the trial when the tribe filed for a declaratory relief because at the outset there must be jurisdiction when the action is filed and of course that jurisdiction must continue throughout further stages of review in April of 2005 there was a management and development agreement between Harris and the tribe which required approval by the NIGC that document is part of a motion that's pending which was made by Harris to supplement the record we initially did not oppose the motion to supplement and would reserve our comments on the lack of efficacy of that document to do anything because it was an invalid contract 2711 which controls management contracts requires that any contract which calls for management of a casino or any agreement collateral to that NIGC and there was a signature line for those individuals to sign off on those contracts and the exhibit submitted in Harris motion to supplement does not bear the endorsement and under the of either NIGC or the Secretary of Interior and under the corresponding CFRs which amplify on that requirement it is clear that is that a contract to manage a casino or one that is collateral to the management of a casino is void for lack of endorsement by the NIGC or the Secretary so ironically the very parties that are challenging the validity of my contract with the tribe or my client's contract with the tribe they themselves have an automatic invalidity provision that haunts them their indemnification contract never took effect because it was it resided in an unapproved unapproved management contract which has since been terminated so our initial position is there was no subject matter jurisdiction in April of 2005 and that situation has only compounded itself with the apparent termination of the agreement in March of this year a development that we were forced to bring to the court's attention because counsel wasn't forthcoming and I apologize for the slew of papers that have hit this court in the last two weeks we're only able to piece these things together recently so my our view is quite frankly the tribe never had subject matter jurisdiction in April 2005 and whatever was done in March of this year and apparently now there's been a last-minute filing of a confidential agreement which I've not never been given a copy of even with the motion which supports yet another basis for indemnification however odd that is and it's 30 years of practice I've never seen anything submitted ex parte to a court but however odd that is the fact remains that whatever was done in March of 2007 cannot retroactively provide jurisdiction that the tribe black in April of 2005 when they filed for debt relief initially there's just a total absence of any of any case or controversy we have given them a covenant not to sue and more importantly when they did file for debt relief in April 2005 when we answered we consciously and purposefully waived the counterclaim that would have been compulsory under rule 13 so it's this tribe not only does it not have a reasonable apprehension of suit that standard has been relaxed recently by the Supreme Court it has been effectively immunized from suit by virtue of the pleadings that we filed and the things that we did or consciously did not do this case ought to be about Harris and NGV I think quite frankly I think that Harris has used the tribe as a stalking horse because it's a far more sympathetic litigant that Harris has been initially when when the when the case was before the district court on the scope and application of the statute Harris lost the very argument they're trying to resurrect today and that is what that section 81 applies to a contract even though there are no existing Indian lands and trust and the contract in this in this instance called for my client to purchase the land assist the tribe in placing it into trust and thereupon build a casino there is no way that the VIA would even look at a contract in the absence of Indian lands and they said as much there's a letter in the file that the parties rely on the other side relies on to support their position that summary judgment was correct but in that letter there's a footnote from the VIA it's the April 13th 2005 letter stating that we did not initially pass upon this issue because we did not believe there were lands and trust which were covered by these contracts and we found there was lands and trust but not related to the contract this is the this is the land that your honor's referring to is the tribes reservation in Mendocino County and both parties not just my client but the tribal chairperson Merlene Sanchez testified that it was not their intent or understanding that the contract that brings us here today was to implicate cover or pertain to the the existing reservation for a very good reason that land was purchased with HUD monies under a very severe restriction that's all in the record and Sanchez testified to it that the land could only be used for low to middle income housing what do you have to convince us of the prevail here today that the statute means what it says it means nothing and nothing greater than what the Congress intended and that is to say that the United States government has no authority or jurisdiction to review contracts in the absence of lands and trust which are titled to the United States as trustee therefore you have a valid contract correct because our contract would be vetted that contrary to what Harris argued our contract would have been fully vetted by the Secretary of Interior during the feet of trust process under part under 465 of 65 or 65 and the corresponding regs that's that's that's the position of the BIA in its letter under the current administration and an affidavit from former in the Assistant Secretary of Indian Affairs now Professor Gover at the University of Arizona Law School under President Clinton said that the BIA's policies they do not review contracts in the absence of Indian lands why for a very obvious reason they can't do it an environmental study they can't conform with with NEPA they can't make any judgments about the land until they know what the land is well what did the what did the BIA say and it's April 13 2005 letter to Merlene Sanchez about this well they said now they made an assumption it's not clear in the letter they made an assumption that the contract in question in fact covered or pertain to the reservation but we know from Merlene Sanchez that is not true and there is an affidavit in the file which is which is cited in our reply brief that when the BIA found out about Merlene Sanchez's testimony they acknowledged they had issued the letter prematurely and incorrectly now where does it say that it's in our it's we cite that in our reply brief it's in connection with a rule 11 that was brought against my client of my firm and we had had conversations with with the BIA regarding the letter and the BIA was uninformed that the tribes position at least the signatory for the tribe had represented in her testimony had said in her testimony that the the land in Mendocino County was unaffected by the contract the BIA was led to believe otherwise I appreciate that my worry is that in and in my dealing with this particular agreement I have to deal with the terms of the contract as it is and you would want me to deal with it as a clear and unambiguous contract and if I read the clear and unambiguous part of this agreement it seems to me that these agreements do encumber all of the Indian trust lands in fact that you may attach a claim lien right of entry or liability to the real property in in the case that you would have the opportunity because they would fail to do what they needed to do under the agreement if you but I that is the import of the language and it's especially not the intent of the parties the language the contract the language well read it it uses the term trust lands is defined as a property upon which the casinos to be built so well if I read property it says here under the lease is the real property upon which the structure will be constructed by developer which at the time of construction will be titled to the United States in trust for the correct and that's the only property to which the contract is making reference well if I read trust lands however in the last part of the exhibits under the contract that doesn't limit it to that property alone well there certainly I would I would like to disagree if we assume that there is even a latent ambiguity in the contract the California Code of Civil Procedure expressly resort to extrinsic evidence well I'm puzzled by it by this property in the lease is a term of art isn't it capital P property that's correct and then property is defined later on in the way that I just read right yes let me let me let me try to get that language and so I can follow the court more closely trust lands under the lease are defined as I see it as property with a capital P held by the United States in trust for the benefit of the tribe and property is not a generic term then and and I look at the definition of property and it's the thing that I read that is the real property upon which the structure also defined term will be constructed by the developer so I'm I must tell you I'm puzzled by the notion in candor of ambiguity well go on I'm sorry when I find that that language I'll go back to it if I had the time but it seems to me that when both parties admit they meant Whiteacre and said Blackacre reformation of an there's no question but that the party did not intend Merlene Sanchez certainly did not intend to encumber her homestead if you read the lease in its entirety section 14.1 contains a representation and warranty by the tribe that by entering into the agreement with my client or actually its predecessor they're in violation of no restriction otherwise applicable to them and yet if you read the definition of property or trust land as your honor just did the with HUD and with the BIA to use the Mendocino reservation solely for residential purposes and under the doctrine that all provisions in a contract must be given their full meaning the only harmonious interpretation that can be derived is that trust lands me something other than Mendocino County if my client wanted to put a lien on that property because there's no question you couldn't build anything there was built out if my client wanted to put a lien on that property you would think that they would reference the property with a legal description or even by name there is no reference to Mendocino County it was so far off the radar screen that they didn't see fit to exclude it but yet that's the testimony of Merlene Sanchez let me ask you another question that kind of changes subject just a little bit you know about the aspect about Chevron deference to under the Chevron case deference to those who would interpret these regulations under the administrative law and I I submit that I don't think Chevron deference is old in this particular situation but we do have the Skidmore case Skidmore versus Swift and company which says that a body of experienced informed judgment to which courts and litigants may properly resort for guidance is the administrative law now that's never been changed and as long as it's thorough as long as it's valid in its reasoning as long as it's consistent as long as the factors which give it the power to persuade if I read the the documents sent to us by those who would then be interpreting this under the administrative regulation seem to match just exactly what we have under Skidmore but judge BIA can can certainly announce its policy to certainly interpret regulations for which it has jurisdiction but it cannot interpret a contract under California's rule of parole evidence that's what Cecil V Wynn held that a public record which is otherwise an exception to the hearsay rule cannot contain a legal opinion if it does that portion of the public record isn't admissible in effect the BIA which was misled about what the party's intended gave in the course of their discussion a legal opinion as to what the contract meant in violation of Cecil V Wynn which recently came down from the District of Hawaii adopting the 11th Circuit rule as well as an unpublished opinion of this of this court so the the letter is admissible for one purpose to show that the contracts weren't approved but it's not admissible to determine dispositively what the parties meant and and the California Civil Code states as follows this section regarding parole evidence does not exclude other evidence of the circumstances under which the agreement was made or to which it relates or to an explained and extrinsic ambiguity under 1860 of the California Civil Code the court is to put itself in the position of the parties to understand what their intent was Merlene Sanchez of all the people in the world did not want to encumber her property we certainly didn't want to encumber her property the only time this definition ever arose was after Harris lost the motion to dismiss. What does all that language mean in the contract then if it wasn't intended to accomplish what it appears to say it was trying to do? Just to give to the government to be placed in trust. So you're what are you is this a question of what tense people are using? I mean let's say that that's exactly what you were talking about had already been done would that be covered by 81? If the yes absolutely and that's there's a world of difference there. That's the point I mean you're trying to say because it hasn't been done yet. That's correct because if it hadn't been done it would have been covered. Exactly if the land. That doesn't seem to fit at all into the spirit of what we're talking about. But this whole government. I'm sorry sir. Go ahead. I'm looking at my time. The D.I. will not review a contract under 81 unless there's land pertinent to that contract already taken into trust. I don't buy that at all. Well they said they say that in their footnote. Well. They say that clearly in their footnote and it's consistent with 84.004 of the CFRs which state that a contract need not be reviewed under section 81 if it's to be reviewed under other provisions of title 25 namely 465. Your argument destroys years that went into section 81. But this is going to be a non-starter for both tribes and developers if we require compliance with 81 but the B.I.A. doesn't want to sit down and review the contract. Let me ask you another question which I'm hesitant to ask but I'm the baby so I'm going to try it. Under 2927.10 of the tribal gaming ordinances and this would be 27.10.2C or excuse me 2E. It would seem to cover this particular thing but nobody's talked about it in this particular appeal. It says the chairman of the gaming commission shall approve any tribal ordinance or resolution concerning the conduct or regulation of class 2 gaming of the Indian lands within the tribe's jurisdiction if such ordinance or resolution provides that and if you go under E the construction and maintenance of the gaming facility. Now why doesn't that just hit it? The problem was there was no gaming ordinance in effect at the time these contracts were cut so there was nothing to compare it against and 27.10 relates to the gaming ordinance not contracts between tribes and outside developers. So while the gaming ordinance needs to say all these things, there is no authority for the NIGC to review anything other than management contracts. The district court so held that they didn't challenge that ruling. Was there going to be a gaming ordinance? Eventually there was one but after this contract was cut. And all of this gets vetted in the fee-to-trust process. I'm going to sit down. I have another minute and I want to reserve it for rebuttal. Thank you very much. May I please the court? Fred Petty on behalf of the Giddeville Band. Let me take as the first issue what you raised, Judge. Good. I was going to ask you the same question. Thank you. Impressions on my part I suppose. There's really two issues here, Judge, with respect to whether or not Giddeville has standing in this case and if there is a case or controversy. And the first that Mr. Kalvaca didn't touch on is certainty for my client. My client entered into agreements with his client, NGV, and then terminated those contracts. His client then sued my client's new developer on a theory of interference with a contract that they maintain is valid. That contract has a term lasting up to 10 maybe longer years. Part of the reason that we sought a declaratory judgment was certainty for my client as they go forward and try to build a casino and try to enter into contracts with people that NGV will not come back again and file the same type of litigation. If you're not exposed to potential damages or potential action, then is the fear that you've identified something that's justiciable? I believe so, Your Honor, because it is the type of fear that could bar someone from entering into agreements and contracts with my client. Moreover, as in the case with That, of course, might point to a future controversy. And the question again that I have, what about this more recent, the March 2007 document? What did that do in terms of reviving what I gather counsel says is an extinguished obligation to identify? I'm not sure that it was ever extinguished. My client entered into agreements with Harrah's under which Harrah's would develop the casino and the facility by the land. Part of that agreement, because of NGV's claims that their contract had been interfered with, required my client to indemnify Harrah's. But counsel is saying that was an invalid agreement. What about that? Well, whether it was invalid or not, I don't believe is at any moment now, because my client has resolved, my client at some point had issues with Harrah's. They have resolved those issues in a settlement agreement. That settlement agreement requires my client to continue to indemnify Harrah's for this litigation being brought by NGV. Can you bootstrap yourself today before the Court of Appeals if counsel is right about the inability to assert that at the district court level? Counsel is saying you had no deal, you had no valid deal. At the time that he's saying. And especially since it's the same argument you make against his contract. His contract, too. That our contract would have been required, they were management contracts, they needed to be approved by the NIGC, therefore they're not valid until such time as the NIGC has approved it. That begs the honorable judge's question whether he likes it or not valid. My client had entered into agreements. Those agreements eventually needed to have approval by NIGC. The question is whether or not those were enforceable to my client prior to the NIGC's approval. And that's really an issue between my client and Harrah's. And not between my client and NGV. And whether or not my client would eventually have an obligation to give to Harrah's. But you're the one who's relying on that against NGV. Well, it's really a different situation. I think had my client challenged the validity of those contracts as to Harrah's, that argument is different than for NGV, who is not a party to those contracts, to say that my client's obligations to Harrah's were not yet valid or ripe, and therefore there's not a controversy. That seems to me to go back to what Judge Trott had asked, whether or not you're frustrating the ability to reach these type of contracts. Because if we waited until there was a management agreement in place, at that point, clearly they would be valid, and clearly we would have those obligations to pay that money. Meanwhile, we had this situation going on over here, where we were incurring a debt, a debt that would come due someday as a result of NGV's litigation. And I submit to the Court that there's a difference here. It may be subtle, but what we're talking about, or the question you're asking, Your Honor, is about my relationship to Harrah's or my client's relationship to Harrah's. And what we're complaining about today is our relationship. It's based on that relationship, that agreement that you rest, in order to say that now we've got a controversy against them, because even though they've released us from direct liability, we have a third kind of responsibility, and that is the responsibility to Harrah's. And if you're saying that does not exist, then how can you rely on that in order to say to NGV, we've got a real live dispute with you? Well, I think it does exist, Your Honor. It is at some point in time. While this controversy is going on, our bill is accruing, and it's a bill that's going to come due and owing. Moreover, I, you know, go back to my original argument, Your Honor, I do think it is the type of controversy that prevents my client from having business relationships and creates an uncertainty, because my client has terminated in its belief, rightfully, has terminated its contract with NGV. NGV now is using those contracts to come back and try to get from Harrah's, if not Harrah's, perhaps another person, money that it was not entitled to get from my client. If I could, looking at the time, if I could return to the main argument here. Judge, I think there's really one question for this Court to decide, and that's whether or not there is a valid contract between NGV and my client. I submit to the Court the answer is no, and for three reasons. The first reason is that the contract between NGV and my client encumbered land to be purchased. And because it is undisputed in this case, it was land that would be tied up, and the tribe's ability to do something with that land, transfer it, assign it, would be tied up for a period longer than seven years, it's covered under Section 81, 25 U.S.C. Section 81. So you agree it's land to be purchased? Absolutely. But that's a different question to the second question. If you'll wait a second, I will get to that. That, I think the case that's instructive here is the AK Management versus San Manuel. In that case, the Ninth Circuit found that agreements not unlike the agreements here, in which AK Management was going to operate a bingo facility, had to be on tribal lands, had to be approved under Section 81. There was a duty of good faith to try to get that approval. And the tribe, three days after the agreements were signed, elected not to go forward with them. When AK Management filed their lawsuit, the Ninth Circuit said, if you're doing business in Indian country, Section 81 puts you on notice that for your contract to be valid, it must be approved, if it encumbers land in the ways that are covered under Section 81, that it must be approved by the Secretary in order to be valid. What's all this business then with Merlene Sanchez saying we weren't intending to encumber anything? Well, Your Honor, I think that's to some degree of no moment, and really goes to the issue of whether or not the land in Ukiah and the terms of the contract are a way that you could reach this Section 81 argument. And if I could just set that aside for a second, Your Honor, the ---- Well, we have amended Section 81 since this. Sure. In totally different language now. But I think if you ---- I mean, when I read that language, we were talking about agreements relative to Indian lands, and we struggled with relative. Right. Now, we're not talking about that. We have some pretty clear language here. Right. We don't have relative to here. No. And if you go back, but I don't think that changes the AK management decision, because if you look at that opinion, it talks about tying up that land on which the bingo facility was supposed to be located for a period of time. Moreover, it is the case that Judge Conte relied upon in making his ruling. And I think he was correct for a number of reasons. One, you're clearly on notice if you're dealing with Indian tribes and you're going to tie up land that you're going to need secretarial approval. Moreover, what AK management says is you don't get to piecemeal these things. You don't get to say it's valid now for this purpose. In this case, the ability to sue Harris. But it's not valid for these other things until we take the land into trust and then the secretary and the department take a look at it. And that's what they're trying to do here, and that's what Judge Conte said. You cannot piecemeal this. That's very easy to say when you've got an overall encompassing language like relative to. But in this case you don't have that in this language. There is no relative to language under 81. No. But the language is clear, Judge, under 81 now, that if it's intended to try to tie up the land for a period greater than 7 years, it is covered. And there is no dispute in this case or in this record that the contracts involved here were going to last and tie up land for longer than 7 years. So it's not valid. So counsel, Section 81b talks about no agreement or contract with an Indian tribe that encumbers Indian lands. Once again, a term of art. Indian lands is defined as lands the title to which is held by the United States in trust or lands the title to which is held by an Indian tribe. And you've just said that this, that your deal contemplated land to be purchased. Correct. Not land that is held in trust. Correct. Can you have it both ways? Yeah. I think you can, Judge, because it frustrates the intent of the ability to review The Siscalia always tells us we get intent from the language of the statute. Right? Right. But you also have here we're in an arena involving Indian law where there is a canon of Indian law that says you need to look at these expansively and in a way that protects the tribe. Who is to say that a tribe is better protected by being able to engage in commercial activity that helps it rather than the other way around? I mean, you know, that cuts both ways, doesn't it? It does indeed, Your Honor. But the situation here is that this contract contemplated that this land would be taken into trust. In order for gaming to take place under the Indian Gaming Regulatory Act, the land has to be in trust. So it had to this contract contemplated land that would be in trust. It was going to be held in trust. Absolutely. But it is held in trust, right? At the time the contracts were signed, there was no land held in trust for the specific purpose of gaming. Now, if I could return to your question, Judge Trott, I think it's you look at the contracts between the parties. In the master definitions section, there are two definitions that matter. One is property, which clearly defines property to be that property on which the casino would be built and the land would be held in trust for the tribe. It would be transferred to the United States to be held in trust for the tribe. The other definition that matters is trust lands, which includes all the trust lands held by the United States for the benefit of the giddy vote band. Counsel, you've got that one backwards. The lease defines trust lands as property, as I tried to point out with counsel, as a defined term.  Property is said the real property on which the structure will be constructed. Now, if you have on the Mendocino lands not even the whisper of a potential to construct something without violating all kinds of restrictions, it's acquired for residential purposes, it's held for residential purposes. That's the purpose of that land, not for constructing a structure that's a casino. So you can't really have that one both ways, I would think. Well, Judge, I think you're reading that wrong. Really? I'm just reading it correctly from the language. I think you're reading property with a capital P to be a defined term. It is. It is certainly a defined term here. But I think you would look at this as the first letter in that sentence. That's why it is a property P. I disagree, and again, under the situation we are here involving an Indian tribe, they're not the drafters of this document. Certainly any ambiguity goes to the drafter. I read this, Your Honor, in all deference, to include. What creates a contra profferentum approach to this document? Do we know who drafted this document? The tribe was not represented by counsel? You know, Your Honor, I know the answer to that question, frankly, I'm not sure that it's in the record, and so I'm not going to, you know, I will, but so I'm not sure that I should answer it. But it is that the authors of this document, I believe that is in the record, were NGV. This document, and I believe the way you should read it, in all deference against Judge, is that the United States, that the trust lands includes all lands held in trust for the tribe. And to go to your question, Judge Trott, I think it is of no moment that Chairman Sanchez says we're not going to build a casino on that property, because if you look at section 14.9B of the agreement, the development agreement slash property lease, it ties up all trust lands that the tribe has while this contract is in force. In other words, it reaches not only the land upon which the casino was going to be built, but also the land upon which the tribe, the 44 acres the tribe already had in Mendocino County. And lastly, I'm running out of time, I would suggest to you there is a third way this court could affirm Judge Conte's ruling, and that is, frankly, that the NIGC, and this is in the record, has found that the contracts violate IGRA, because they give a proprietary interest to NGV in the casino. Under IGRA, it is the tribe that must own the casino, not the developer. Here, the developer is compensated far in excess of what their role and what they had done. They're not providing management. They have a great deal of control over what happens at the facility, and their ability of the tribe to terminate its relationship with NGV is severely limited. That is another ground. We urged it below, and I believe the court could find it now. Thank you. One question. You would agree with counsel, then, that as it relates to 292710B2E, that does not apply in this particular matter? No. Your Honor, that is really going to the issue of whether or not there are a tribal gaming ordinance. I would tell the court that there was a tribal gaming ordinance adopted and approved, and that tribal gaming ordinance was in place when the NIGC issued its letter, finding that NGV's contracts are not legal under the Indian Gaming Regulatory Act. Thank you. Thank you. Under the statute, the Secretary was required to set forth regulations identifying those contracts which fell outside of Section 81. And in 84.004 that I alluded to, I have the actual language. It's set out almost in a Q&A format, 84.004 reads as follows. Are there types of contracts and agreements that do not require secretarial approval under this part? Answer, yes. The following types of contracts or agreements do not require secretarial approval under this part, meaning Section 81. Contracts or agreements otherwise reviewed and approved by the Secretary under this title or other federal law or regulation. That's where 465 comes in and its corresponding regulations. So the agency has taken a firm position that it will not review contracts for 81 compliance unless there's lands in trust, because if there isn't lands in trust, that's a whole different regulatory process, and quite frankly, Judge Trott, it would throw the whole regulatory scheme on its ear if you required the BIA to make a decision in the dark about property that hasn't been identified and for which the government has no trust responsibility. And getting back to your point, Judge Schader, about the definition of terms, I think the best way to look at it is that within the term property, which is the larger term, property being defined as the real property upon which the structure will be built, trust lands is a subspecies. That is to say trust lands is defined, is limited by the definition of property. Only that property which is taken into trust, only that property upon which the casino is to be built, which is then taken into trust, is within the definition of trust lands. It's specifically, the way I read it, it would exclude anything other than the site of the casino, and that's what the parties intended, and California's rule of parole evidence allows that evidence to come in.  Thank you very much, gentlemen. The cases 05-17066 and 05-17067 are now submitted.
judges: Trott, Smith, Shadur